Good morning. May it please the Court, my name is Shannon Johnson. My partner, Alejandra Salinas, and I are supervised law students from Boston College Law School, appearing under the supervision of Kari Hong, who is seated at the Council table. We represent Petitioner Ms. Blackwell. With the leave of the Court, I respectfully wish to reserve three minutes for my partner to provide a rebuttal. There are two notable features about Nevada's law that make it not a CIMT. The Court need only agree with us with one. First, Nevada's prostitution statute is a regulatory scheme that does not criminalize conduct that is inherently wrong. The statute's underlying conduct is commercial sex. Ms. Johnson, could you address for us first whether or not that issue is properly preserved for consideration? Yes. On the exhaustion issue, the government does attempt to turn the BIA's erroneous oversimplification of the issue into being a shield from review. The BIA, on its own independent review, found and cited Tarohit, which is a decision not previously raised by the IJ or DHS. The BIA did not need to write any more than it did because the BIA determined that the issue is so obviously on point to existing precedent. The BIA completely misunderstood the merits of the issue. It did not ignore them. Well, your client's, as I understand it, initial brief when she wasn't represented brought up this question of the CIMT, but then when she was represented, it wasn't briefed by her counsel. Yes. It's our understanding that the BIA only considered her pro se brief. However, the issue was on whether the convictions touched on her good moral character. But we argue that what the BIA did was a substantive review of this issue. Counsel, I'm very much in sympathy with your argument that, at least in Nevada, commercial sex is just not ace, vile, and depraved, the test for crime involving moral turpitude. But I have trouble getting around Rohit. And one reason I have trouble is the history of this moral turpitude and prostitution category. As I recall, it came into the law in 1875, basically on the basis of prejudice against Chinese workers coming in and trying to keep prostitutes from coming in to serve the Chinese workers. And prostitution was a particular target of Congress, regardless of what some state might have thought about it. I don't really see, in view of the history, how we can distinguish Rohit. Your Honor, this Court has consistently held in other cases, such as Fernandez-Ruiz and Hernandez-Cruz, that a crime can be a CIMT in one state and not in another. For example, in Fernandez, an Arizona spousal abuse law was not a CIMT, but in California it found that it was. Is that because the morality is different in different states, or because the terms of the statute qualify differently under the categorical approach? Our understanding is that the underlying conduct under the statute was different in each of those. Because a CIMT is conduct that shocks the public conscience, and because commercialized sex is illegal in specific times and places, Nevada's law cannot meet the standard. In Quintero Salazar, statutory rape was not a CIMT, because when performed in a marriage, sex between an adult and a minor was legal. Nevada's statute is also non-prohibitive. It just doesn't have the same history, though, as the federal bar on allowing prostitutes to immigrate. And I do not have the exact answer for that question, but I'm happy to file a supplemental brief on the history of prostitution, if you would. Not unless we ask for one. Okay, even if you disagree with our mal and prohibitive argument, our second point is Nevada solicitation law lacks a specific intent. In Glagola, it recognizes that Nevada solicitation offense is a general intent crime. In Glagola, a person was convicted for a solicitation made entirely in jest. By contrast, Rohit held California's specific intent solicitation crime to be a CIMT. In California, Love expressly held that solicitation must be made with a serious intent of actually having commercial sex. Look to me like that California statute you're talking about there has a sentence in it, basically so that police can arrest prostitutes without having sex with them. That looked to me like why they must have written it in that somewhat twisted way. The question is why they... But it doesn't mean that it wasn't a crime involving moral turpitude. In the California statute? Yes. Yes, we are arguing that the... It looked like it was a John statute. Okay, I can bring that to my partner to answer on rebuttal. However, Rohit is also not dispositive to this case. In holding California's statute to be a CIMT, Rohit noted that California solicitation law was malum in se and required specific intent. What does specific intent versus general intent mean here? I mean, those are terms that get used a lot after 40 years out of law school. I'm still not sure, but I know what they mean. What do you think they mean? I think in the Nevada prostitution statute, it touches on, again, these are crimes that are morally debased, depraved, and shock the public's conscience. And when someone doesn't intend to actually engage in an act such as prostitution and can merely be charged with solicitation for something they didn't intend on doing, that doesn't touch upon the gravity or the seriousness of a crime. And it's not to say that prostitution is not a serious crime. However, as this Court said in Hernandez-Gonzalez, a crime must be more than serious to be a CIMT. It must prohibit conduct that truly shocks the public conscience. If there are no further questions, we'll leave the Court. Let me ask you, and the government's position, as I understand it, is that if we are to entertain this question, that they should have an opportunity to have the matter remanded for consideration by the BIA. What's your view on that? We are asking for the same remedy that was given in Hernandez-Cruz, which is when the BIA misapprehended a Ninth Circuit decision regarding a Washington burglary statute to be controlling over a California burglary statute. This Court did not remand. The issue of Ms. Blackwell's solicitation convictions being CIMTs was a central issue to her movability. And the BIA, it was not a new issue before the BIA. It was central to her case. Is that because there's no deference accorded to a decision by the BIA on a question of statutory construction like this? Under the circumstances, we'll give your colleague the time. Thank you. Don't worry about it. Thank you. But go ahead and respond to the question. You were so concerned about the clock that you probably didn't hear the question. In this case, because as the Court has said in Ceron, there's a two-step test, and when the BIA does not identify the elements of the statute, this Court can review that issue de novo. Not so fast. She'll still get the time. I'm curious about this last question Judge Seabrook posed, which is, you said the BIA has already had a chance at it, and yet the arguments you're making today are substantially different than the questions that the BIA was asked to speak to, particularly the differences between the California statute and our Rohit decision. So they cite the Rohit, but they have no reason to think that your client is making an argument that the Nevada statute is different. Why shouldn't the BIA speak to that question first? The BIA had the ability to review the conviction documents that were provided in the record. But did they have any reason to consider the questions you're posing today? I mean, offhand, the notion that we treat solicitation of prostitution differently in one state than another is not intuitively obvious. Your client didn't make that argument previously, so why should we assume the BIA had a duty to consider the argument that was never made? Because, as this Court has held in kin, even when a petitioner doesn't raise an issue to the BIA, once the BIA does a substantive review of that issue, they meet their exhaustion requirement. But I'm not questioning do they meet the exhaustion requirement. That was a question posed a few minutes ago. The question now is have the BIA had a real opportunity to speak to the issues you've raised, and if not, aren't we obligated to let the agency speak first? And we argue that because of the centrality of the issue, that the government also has had, there's no reason to remand because it did not cite a single law or fact that would have reached a different result from our brief. The BIA's interpretation of the state criminal law is outside its expertise, and there's no practical reason to ask for Ms. Blackwell to continue to wait for the BIA to reach another decision. If there are no further questions, I wish to reserve my remaining time. And your colleague will have her time. We'll hear from the government. Good morning, and may it please the Court, Meadow Weirich Platt on behalf of the United States Attorney General. The Court should deny this petition for review because the Board correctly found that the petitioner did not meet her burden to show eligibility for special rule cancellation of removal. Could you address why Rohit shouldn't be distinguished? Because although in most states prostitution is regarded as morally turpitude because of the nature of the act in Nevada, it really isn't. It's just a matter of county licensing and keeping it in a brothel. Your Honor, I hesitate to answer that question for fear of violating Chenery because that's not reasoning that the Board was ever presented with or met. It looks to me like the Board spoke directly on the issue, whether it was adequately raised or not. And it's sort of hard to say that something's not adequately raised and the Board hasn't had a shot at it when the pro se brief put it out there enough so that the Board noticed it and addressed it explicitly. So why don't you go ahead and you're not making concession on behalf of the agency that it's exhausted, but just address this core argument that the appellant made. Yes, Your Honor, and I will answer your question, but just really quickly. My reading of the administrative record is that the pro se brief did not ever raise the CIMT issue, nor did the brief filed by counsel. But to answer your question. But I wonder why the BIA addressed it then. I am going to get to your question. So the government's position is that the BIA addressed it because the petitioner requested a 212H waiver of inadmissibility so that she would be eligible for special rule cancellation and removal. And for her to even need a 212H waiver of inadmissibility, the threshold finding would have to be that she was convicted of two CIMTs. So the government's position is that the Board was simply noting as a threshold matter as a step to reaching the issue that she raised, which was am I eligible for a 212H waiver. So you're saying the Board held that prostitution in Nevada is a crime involving moral turpitude even though it wasn't fully raised, and therefore we shouldn't take it seriously. No, Your Honor. My argument, the government's argument, is that the Board was not making a holding. It was simply summarizing the party's and the immigration judge's agreement. All right. I get that point. Now could you move on to the question, why is it a crime involving moral turpitude in Nevada if Nevadans just don't think it's that bad? They think it's okay as long as it's in a licensed brothel. Your Honor, just speaking. They don't think it's vile and base and depraved. So as an initial matter, immigration is national law. It's not state-specific law. Another point is that the issue in which there's. . . What if prostitution wasn't illegal at all in Nevada? Nevada was just a legal prostitution state, like many European countries. I think Rhode Island had a little interval when prostitution was legal there. What if it was legal? I think the federal law just says crime involving moral turpitude. It doesn't say prostitution. Would it be a crime involving moral turpitude even if it wasn't a crime? If it wasn't illegal, she would never have been arrested. The government would never have been even on notice. She wouldn't have a conviction, and she would be on its face eligible. Now she'd been arrested for murder, say. That's not a crime involving moral turpitude. So she'd be okay on that, unless it was a crime of violence, I suppose. Here's what I'm getting at. If prostitution's not a crime under state law, then it's not a crime involving moral turpitude because it's not a crime. If it is a crime under state law, but it's not considered a moral wrong, it's just considered a licensing violation, why is it a crime involving moral turpitude when that particular state doesn't regard it as vile, base, and depraved? I understand your question, Your Honor. I think it's important to look at the procedural posture of the CIMT issue. The Immigration and Nationality Act provides for CIMT's crimes involving moral turpitude in two contexts. One is in Section 237. In that context, the person has to be convicted of a crime involving moral turpitude. In contrast, the section that we're looking at here is the inadmissibility provision. There's no conviction even required. It simply is the person must have committed or been convicted of a crime involving moral turpitude. I can pull up this site. That seems odd, given what the BIA said. The BIA's decision says we agree with the immigration judge that these convictions are categorically for crimes involving moral turpitude. You're suggesting that we don't need the categorical approach at all because just commission of the act without a conviction is enough. We encounter that distinction a lot. But in this case, it's the BIA itself that voluntarily talked about the categorical approach and voluntarily cited to Rohit, which was apparently not cited by anybody to it, suggesting they were looking into the issue. So is your question in relation to the CIMT issue? I'm trying to understand why you're shifting this over to an approach where we can look at behavior, not just at convictions, when the BIA's decision made reference to conviction and the categorical approach would suggest we don't just look to behavior. We look to the fact of conviction. Well, because the petitioner in this case was convicted, and the statute specifically says it's 212. I'm sorry, I'm alternating between the INA site and the USC site. I apologize. We're confused by that all the time. So the INA site is INA section 212A2AII. It says, in general, except as provided in clause 2, an alien convicted of or who admits having committed or who admits committing acts which constitute the essential elements of a crime involving moral turpitude, et cetera, et cetera. And so in this particular case, she was convicted of it, which is why the board or she was convicted of something. The question becomes, is this something she was convicted of, a crime involving moral turpitude? She points out, for example, that the Nevada crime for which she was convicted is a general intent crime, and there's a Nevada Supreme Court decision that says you can be convicted for that, even if you have no intention of having engaged to engage in prostitution. That comes up in a criminal context where somebody was just going to rip off the customer. But the point appears to be that a conviction for this crime under Nevada law doesn't necessarily mean that there's any actual prostitution involved someplace. So on what basis can we say this is necessarily vile and depraved if there's not necessarily any prostitution involved? Your Honor, this is really, I do want to answer your question, but this is really going into the merits of the CIMT analysis. It's the government's position that the board never even addressed this. You realize we don't— Yeah, we're not buying that from you, Your Honor. You're holding on to the position, but the board's addressed it. You keep evading the question by saying you don't want to talk about it because you should win on some other question, but maybe you'll lose on that question, and you'll have to address, or this is at least your opportunity to address the other question. Your Honor, I'm sorry. My position is not that I'm going to win on the other— I know your position. Your position is exhaustion, goodbye. And you may be right, but this is your opportunity, if you want to take it, to address the merits if we get past exhaustion. Your Honor, I think if you get past exhaustion, the proper course is under Ventura to remand to the Board of Immigration Appeals. Why is that so? I mean, you had your choice. You made your choice as to the posture you're taking here now, and to then say the fallback is, well, we're not going to give a fulsome argument on the CIMT question but if you're all inclined to think you're going to go in that direction, then remand it. Is that really fair? I mean, you've made your choice about what you're going to focus on, and if the exhaustion argument doesn't win, shouldn't we address the question? No, Your Honor. The government brief did argue exhaustion, and in the alternative, the government argued that the case should be remanded under Ventura because the Board of Immigration Appeals has specialized knowledge regarding— it's a two-step process, as opposing counsel correctly pointed out, but the Board does have specialized knowledge regarding moral turpitude. Well, but do they have any kind of specialized knowledge such that there would be deference to their interpretation of the Nevada statute? No, Your Honor. You have specialized knowledge or de novo review over the elements of the statute, and then traditionally the court, for example, in Rohe, as well as recently a February 2015 case, Hernandez-Gonzalez, you remand to the Board to determine whether the elements meet the definition of crime-involved and moral turpitude. With respect to the litigation choices that the briefing attorney— Well, let me stop you, though, on the point you just made. What benefit, then, does the BIA provide in terms of making that analysis when this court can make that analysis? Why go back to the BIA? Because, as the court has explained in Hernandez-Gonzalez, it said, because the BIA has expertise in that task, and that's the task that it's referring to, is to compare the elements of the statute of conviction to the generic definition of a crime of moral turpitude and decide whether the conviction meets the definition. The court said, because the BIA has expertise in that task, we defer to its conclusions if warranted, following the Chevron framework. And here the arguments that the petitioner makes are, frankly, very interesting, and they are arguments that the Board has never been presented with. In my research, I have not found a single instance, published or unpublished, when the Board was presented with any of these arguments. The Board's most recent published decisions regarding prostitution are more than 50 years old. Well, you know, things are exhausted all the time and treated as fully exhausted, even though the party comes up with some better articulated or even entirely new arguments to make at an appellate level. So, Your Honor, the government respects it. I guess we're coming back to exhaustion. Let me get back to what Judge Clifton was asking about, because I was kind of interested in it, too. I can't remember if ordinary theft not involving dishonesty is presently considered a crime involving moral turpitude. Let's assume for purposes of discussion that it's not. Suppose a person solicits for prostitution with the intent of stealing the person's wallet rather than engaging in sex. In Nevada, that's the crime of solicitation, if it's not in a licensed brothel. In other states, an intent to engage in sex would be necessary. But also in Nevada, soliciting and having sex is just fine. It's not a crime at all, as long as it's in a brothel. I don't really understand why, considering those vast differences in the conduct criminalized, it should be treated as a crime involving moral turpitude everywhere. Your Honor, I see I'm over time, but to answer your question, I'm sorry, could you repeat it? I don't quite understand. Okay, I think that it seems that perhaps in the circumstance you described, that would perhaps be a circumstance where... I'm asking generally about why it's a crime involving moral turpitude, no matter what states do and what the state's positions are on what is wrong and what is wrong with it. I think in that context, perhaps going to the modified categorical approach seems appropriate if you look at the elements of the statute. Perhaps because the Board never spoke to this, I don't know, I don't think that they looked at the elements of the Nevada statute. However, in that context, it seems that the modified categorical approach would show that assuming theft is not a CIMT, I believe it is, but assuming theft is not a CIMT, the modified categorical approach would show that it's not. I'm not sure if that answers your question. No, it really doesn't address my concern about just how much power states have to decide on what's base, violent, depraved, and what's criminal, as opposed to the feds. So, is there a question? I should probably... If you have a comment on that, you're free to offer it, otherwise... Simply, just as I said earlier, that immigration is national law, and if there's one state that is an outlier, then that doesn't necessarily mean that that state should drive all of national law regarding what involves moral turpitude, and likewise, because it should be applied uniformly, it would be odd for someone to commit the same crime in one state, and in 49 other states it would be different. If the court has no further questions... Although, why then are we looking, like in Quintero, at the particular state's statutes and what the state... I mean, I don't understand this notion that, well, we're analyzing state statutes, but remember, it's a federal system, so whatever the analysis is about the state law, we just can trump it with the federal... I don't understand where you're going with that. So where I'm going with that, that's where the Supreme Court's analysis comes in regarding the categorical and the modified categorical. That's sort of the traditional way that the Supreme Court has unified state law and federal law with respect to how a federal law, such as what's a crime involving moral turpitude, meets... I'm sorry, I reversed them by accident. Whether a state crime would meet this federal definition. If the court has no further questions, the government asks that the court either deny or remand this case to the Board of Immigration Appeals. Thank you very much. Thank you, and we'll hear a rebuttal. No, don't worry about the clock. We're not letting you get away that easily. Okay, well, I appreciate the challenge. Good morning. I have four points. First, we are asking this court to reach the merits of Ms. Blackwell's CIMT claim because the BIA has already cited the issue. Rohit controls Nevada solicitation law. The DHS expressly argued to the IJ that a Nevada solicitation crime was a CIMT. The BIA was fully aware that it was dealing with a Nevada conviction because they reviewed her conviction records, which unambiguously indicated the crimes occurred and were being prosecuted in Las Vegas, Nevada. The point that the counsel of the government made about just the federal system and whether or not it really is appropriate to say in a single or particular state when we're talking about a federal statutory structure and conclude that, well, there's this outlier state that has this interesting approach to the question, and so, therefore, we're going to go with that. I mean, why isn't that a pretty strong point? Well, to begin, the government is misstating the standard of the CIMT, and this court needs to look no further than cases like Quintero Salazar and Hernandez-Cruz where the court made the determinations based on how a particular state treats a statute. And so in Quintero Salazar,  of sex with a minor, that made the conduct malin prohibitum in California. It did not need to consider other states before it made that determination, and the same can be done here. Nevada prescribes malin prohibitum conduct. Commercial sex is legal when performed in a licensed brothel. That tells us that this conduct is malin prohibitum, and it cannot categorically be a CIMT. And so there's no reason why we have to assume that we have to make it. It isn't a question of a national survey, but a state-by-state determination. What do you do with that word always in RoHIT? So we would contend that RoHIT was dealing with a fundamentally different crime. As Taylor notes, different states will often use similar terms to describe what are different crimes, and that's exactly what we have here with California and Nevada. Because in California, RoHIT noted that solicitation in California was malin safe, and it contrasted it with Quintero Salazar because it was always sexually exploitive. But in this instance, we can make a direct analogy to Quintero Salazar because it's not always exploitation. It's not always legal. And so the court's analysis in RoHIT was based on a fundamentally different crime that just happens to carry the same term as prostitution. Do we know in RoHIT if it was a john that was involved in the criminal conduct or the prostitute? I mean, on this notion of exploitative distinction, is that something of consequence? I do believe it was a john, but I don't believe that changes the fact that in California the conduct is always illegal, and the court's analysis was based on that determination. And in Nevada, it is not always. That underlying conduct, commercial sex, is not always illegal. And so we can draw that distinction. This court does not have to disturb RoHIT because we are dealing with a different crime. My third point, this case is only about how Nevada treats... I think your view is, this is kind of like driving without a license. Driving is fine, but if you don't have a license, it's a crime. Yes, well, we would contend that it's a question of what is the underlying conduct, and if the underlying conduct is the same, that when it's permitted and illegal, then that conduct cannot rise to the level of conduct that truly shocks the public conscious, because no state legislator would legalize conduct that could meet that standard. On to my next point, this case is only about how Nevada treats prostitution, and it can be decided on the very narrow ground that prostitution is mal and prohibitive and a general intent crime in Nevada. Recognizing it as such will not disturb existing precedent or impact any future consideration of another state's prostitution law, because as this court said in Coyote Publishing, when considering the Nevada prostitution law, Nevada's approach is unlike any other. And so this issue can be decided on those very narrow grounds. And finally, this court can decide on either the mal and prohibitive or specific intent ground. Either of those grounds is sufficient to recognize that this crime is not categorically a CIMT and it would not implicate the sense that a national surveyor would ask the court a question much like the government has stated. If there are no further questions... On the question of remand, again, why shouldn't all these arguments first be addressed in the BIA? The standard for this court to recognize is that when the BIA addresses the merits of a claim, that claim has been fully exhausted. They have had their opportunity to address it. But they didn't address any of the things you've talked about, really. They've taken as a given that the crime was the same because the argument wasn't made to them. Can you point me to anything in the material submitted to the BIA on behalf of your client that suggests that the BIA was expected to look at the details of the Nevada statute as being different from California's statute? Well, the very first step of the... That's a yes or no question. Can you point me to anything in particular? What is that? The record expressly indicates that this was a Nevada prostitution law. Well, fine, but is there any reason why the BIA should be called upon to think about whether Nevada's law is substantially different or materially different from California's law? The question I posed was, was that question put to the BIA in any of the materials submitted on behalf of your client? Yes, it was, Your Honor. Where? That is a fundamental question. Where? When they made a determination, when they said this case was controlled by Rohit. Do you hear an answer to the question where there in your answer any place? It is on page 2 of the BIA's decision where they made a determination. But that's not my question. My question is, did anybody call to the BIA's attention? I'll even ask if the government called to the BIA's attention the issue of whether the Nevada statute was materially different from the California statute such that the conviction shouldn't be treated the same. Let me say, when I start working on a case, I start with the disposition below. I read the BIA's decision. The notion that the Nevada statute might be different just never occurred to me. I mean, I happen to have been aware of something of the Rohit case. But what we've been talking about for the last 15 or 20 minutes wasn't what I was thinking about. Then I got to your brief. Wow, those are some good thoughts, interesting arguments. I'm going to have to think about this. Why did the BIA have reason to think about those arguments if nobody called them to do so? And, you know, I've asked you several times, was that put to the BIA? And so far I haven't heard an answer that tells me that it was. I would say yes because that is the first step of every single CIMT analysis that it has always conducted. What is the statute at issue? It is the BIA's job to determine the elements. Now, they clearly did that erroneously here by relying on Rohit. So I'm hearing an answer that says no, they weren't called upon to do it by anything in your client's materials. That's inherently part of their job. And you can make that argument, but that's a different answer. Well, I would note that in that this Court has said that they have no expertise in interpreting state statutes, and that is where the failure was made. And that's why this Court has always reviewed those determinations de novo, and so this Court can properly interpret it. They misinterpreted Nevada's law, and that's why this Court can now decide the issue and recognize that Rohit is not controlling in Nevada and that this prostitution claim is malum prohibitum, general intent, and not a CIMT. If there are no further questions, I rest my case. Now we'll let you go. Thank you. I appreciate it, Your Honor. We thank all counsel, or aspiring counsel, for your very helpful arguments in this interesting case. We specifically thank the law school and Ms. Hong for participating in the Court's pro bono representation project. We welcome Ms. Hong back to the Ninth Circuit, and after this last winter in Boston, I can't imagine why she's planning to go back. But thank you for your participation. With that, the case just argued is submitted.
judges: Seeborg, Kleinfeld, Clifton